# Exhibit 4



**U.S. Department of Justice**
Civil Division
Federal Programs Branch

| **Mailing Address** | **Overnight Delivery Address** |
|---|---|
| P.O. Box 883 | 1100 L Street, N.W. |
| Washington, D.C. 20044 | Washington, D.C.  20005 |

---

Cassandra Snyder
Trial Attorney

(202) 451-7729
cassandra.m.snyder@usdoj.gov

June 5, 2024

<u>VIA E-MAIL</u>

John S. Moran
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
(202) 525-0356
jmoran@mcguirewoods.com

Re:  *Georgia v. Trump*, No. 23SC188947 (Ga. Sup. Ct., Fulton Cnty.)

Dear Mr. Moran:

This letter responds to the May 13, 2024 letter directed, in part, to National Archives and Records Administration (NARA) seeking information related to Mr. Mark Meadows' tenure as the former Chief of Staff to the President of the United States.  *See* Ltr. From J. Moran to C. Shogan & J. Smith (May 13, 2024) (attached as Exhibit 1); Def. Mark R. Meadows' Pet. for Certificate of Need ("Pet. for Certificate"), Ex. A ¶¶ 1–12 (attached as Exhibit 2).  Specifically, you seek the following records, or alternatively testimony relating to the following records:

- "Any and all official records . . . created or received by Mark R. Meadows" from March 31, 2020 to January 20, 2021," *id.* ¶ 1;

- "Any and all official records from the Executive Office of the President . . . relating to the transition of presidential administrations," *id.* ¶ 2; "[e]mails and text messages" of seven officials within the Executive Office of the President, *id.* ¶ 6; "[a]ny and all emails and texts messages between the Office of the Chief of Staff and the Department of Justice," *id.* ¶ 11, and "[a]ny and all emails and texts messages between the Office of the Chief of Staff" and the Acting Secretary of Defense or the Chief of Staff to the Acting Secretary of Defense, *id.* ¶ 12, from November 4, 2020, to January 20, 2021;

- "Phone logs" of calls between the Chief of Staff's Office and "internal calls from the White House switchboard," "the White House Situation Room," "Air Force One," and "remote vehicle phones," *id.* ¶¶ 3–5; White House visitor logs, *id.* ¶ 10; and "[c]alendars and internal

schedules for the President of the United States, Vice President of the United States and National Security Advisor," *id.* ¶ 9, from November 4, 2020, to January 20, 2021; and

- "Air Force One's manifest" and "[r]ecords relating to Air Force One's allocation of costs associated with official and non-official duties" from March 31, 2020, to January 20, 2021. *Id.* ¶¶ 7–8.

NARA has considered your request for records and testimony under the applicable statutory and regulatory law, including the Presidential Records Act (PRA) and NARA's *Touhy* regulations, and accordingly denies your request.

### 1. The State Court Does Not Have Jurisdiction to Order Production of the Requested Records or Testimony.

The United States has not waived sovereign immunity in the above-referenced matter and thus the state court lacks jurisdiction to compel NARA to produce documents or provide testimony. The United States and its agencies are immune from suit absent an explicit waiver of sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also, e.g.*, *Clay v. United States*, 199 F.3d 876, 879 (6th Cir. 1999); *Louisiana v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992); *Sharon Lease Oil Co. v. FERC*, 691 F. Supp. 381, 383 (D.D.C. 1988) (subpoena must be quashed because state court had no jurisdiction to compel non-party federal official to testify or produce documents absent a waiver of sovereign immunity).

### 2. The Request for Records Is Not Authorized Because It Does Not Comply with the PRA and NARA's Implementing Regulations.

To the extent you seek Presidential records, your request alternatively is denied because it does not comply with the process mandated by the Presidential Records Act (PRA), 44 U.S.C § 2201 *et seq.*, and NARA's implementing regulations, 36 C.F.R. § 1270.38 *et seq.*. As relevant here, NARA may release Presidential records to a non-governmental party prior to the PRA's statutorily proscribed public access, 44 U.S.C § 2204(a)–(b); 36 C.F.R. § 1270.38, only upon receipt of a final federal court order directing the release of such records to the public, and subject to any asserted rights, defenses, or privileges, *see* 44 U.S.C § 2205(2)(a); 36 C.F.R. § 1270.44(1). The state-court Certificate of Need you have provided does not meet this requirement.

### 3. The Request for Testimony Is Not Authorized Pursuant to NARA's Regulations.

To the extent you seek testimony, your request alternatively is denied pursuant to NARA's regulations. NARA has promulgated regulations governing third-party requests for the testimony of current or former employees "for factual, opinion, or expert testimony relating to agency information." 36 C.F.R. § 1251.2; *see id.* § 1251 *et seq.* ("NARA *Touhy* Regulations"); *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).[1]

---

[1] NARA *Touhy* regulations do not apply to requests for Presidential records. *See* 36 C.F.R. § 1251.2(c). As explained above, the PRA is the exclusive means for accessing Presidential records.

NARA's *Touhy* regulations prohibit current and former employees from "provid[ing] any testimony relating to agency information," including Presidential records, "in response to a demand, or other legal request, without the prior, written approval of the General Counsel" of NARA. 36 C.F.R. § 1251.4. In considering a request for testimony, NARA analyzes, among other things, the factors set forth at section 1251.6. Thus, NARA considers whether the request is "unduly burdensome or otherwise inappropriate under the applicable rules of discovery or the rules of procedure"; whether disclosure would violate the law; whether disclosure would reveal confidential, sensitive, privileged, or otherwise protected information; whether disclosure would interfere with an ongoing law enforcement investigation or proceeding; and whether allowing such testimony would hinder NARA in performing its statutory duties, interfere with the ability of NARA employees to do their work, or involve a substantial use of NARA resources. *Id.* § 1251.6.

### a.  The Request for Testimony Is Not Authorized Because It Is Unreasonable and Oppressive.

Your request is denied because it is unreasonable and oppressive. *See* 36 C.F.R. § 1251.6(j) (allowing NARA to consider whether request would be unduly burdensome or otherwise inappropriate under applicable rules of procedure); Ga. Code Ann. § 24-13-23(b)(1) (providing that a court may quash a subpoena that is "unreasonable or oppressive"); *Walker v. Bruhn*, 281 Ga. App. 149, 151 (2006) (quashing subpoena that was "neither pertinent nor relevant," and where requestor "made no showing of substantial need or undue hardship" (quoting *Horton v. Huiet,* 113 Ga. App. 166, 169 (1966))); *see also* 36 C.F.R. § 1251.6(e), (f), (g) (allowing NARA to consider burden on employees and statutory obligations).

The underlying prosecution charges Mr. Meadows, among others, with conspiring to change the outcome of the 2020 presidential election by taking certain acts in furtherance of that conspiracy during his tenure as Chief of Staff. *See* Indictment, *Georgia v. Trump*, No. 23SC188947 (Aug. 14, 2023 Ga. Sup. Ct., Fulton Cnty.). You allege that "what Mr. Meadows was doing, what he was directing his subordinates to do, when they were doing it, and why" will establish that "Mr. Meadows was not conspiring to unlawfully change the outcome of the 2020 Presidential Election, and that his intent was to perform his official acts as the Chief of Staff." Ex. 2, Pet. for Certificate ¶ 13. But your request for "any and all records" and calls that Mr. Meadows and others in his office made or received, spanning a ten-month period, clearly is not pertinent nor relevant to the charged offense.

For example, you seek testimony related to "*[a]ny and all* official records . . . created or received by Mark R. Meadows" from March 31, 2020, to January 20, 2021; as well as "*[a]ny and all* official records . . . relating to the transition of presidential administrations" and the "[e]mails and text messages" of seven additional officials from November 4, 2020 to January 20, 2021. Ex. 2, Pet. for Certificate, Ex. A ¶¶ 1, 2, 6 (emphasis added). Clearly not "all" of Mr. Meadows' "official records" over a ten-month period are relevant to the single count against Mr. Meadows in the underlying prosecution. Indeed, you seek information related to records beginning eight months prior to the earliest date on which the indictment charges either Mr. Meadows or the alleged criminal enterprise with any conduct—*i.e.*, November 4, 2020. Moreover, this request comprises thousands of documents, if not tens of thousands.

Similarly, it cannot be true that all official records from an unlimited number of custodians within the Executive Office of the President relating to the presidential transition (which you estimate will include "many documents covering a multitude of subjects," *id.* ¶ 2) are relevant to Mr. Meadows' defense of a single count of conspiring to change the outcome of the 2020 presidential election.  The same is true of your request for "all emails and text messages" from seven particular officials within the Executive Office of the President, *see id.* ¶ 6, and your requests for "all emails and text messages" between the Office of the Chief of Staff and various other agencies, *id.* ¶¶ 11–12.  Moreover, these requests comprise thousands of documents.  Indeed, your request for emails and text messages from Anthony Ornato alone constitutes over 1,000 emails.  Your request is also unreasonably vague and extensive in scope to the extent you seek records of some unlimited number of unnamed individuals from the Office of the Chief of Staff or the Executive Office of the President.

Likewise, your request for testimony related to phone logs between the Chief of Staff's Office and "internal calls from the White House switchboard," "the White House Situation Room," "Air Force One," and "remote vehicle phones," *id.* ¶¶ 3–5; White House visitor logs, *id.* ¶ 10; and "[c]alendars and internal schedules for the President of the United States, Vice President of the United States and National Security Advisor," *id.* ¶ 9, is unreasonable.  Although you imply that these records will establish "what Mr. Meadows was doing, what he was directing his subordinates to do," and "when they were doing it," Ex. 2, Pet. for Certificate ¶ 13, you do not explain why knowing *when* Mr. Meadows' or his subordinates took certain actions or spoke with certain individuals has any bearing on the charges or defenses in the underlying prosecution.  Nor is it otherwise clear.  You simply cannot justify seeking all information regarding the movements of all individuals in the White House based on an unexplained, generalized need to defend Mr. Meadows.  Nor do you explain your alleged need to obtain scheduling information of the National Security Advisor or the Vice President of the United States, in whose offices Mr. Meadows did not work.  Moreover, your request is unreasonable to the extent you request "phone logs," as the White House—and consequently, NARA—does not maintain digitized "phone logs."  To the extent records of phone calls exist, they are paper records that would require processing by hand.  For these reasons, your request is oppressive and unreasonable under the applicable rules of procedure.

### b. The Request for Testimony Is Not Authorized to the Extent it Seeks Information Not Within NARA's Custody.

Moreover, your request is denied to the extent you seek records not within the custody or control of NARA.  Records related to "Air Force One's manifest" and "Air Force One's allocation of costs associated with official and non-official duties" from March 31, 2020, to January 20, 2021, Ex. 2, Pet. for Certificate, Ex. A ¶¶ 7–8, are not Presidential records and therefore not maintained by NARA.

**c. The Request for Testimony Is Not Authorized to the Extent it Seeks Privileged Information.**

Your request for testimony is alternatively denied because it implicates multiple executive privileges. *See* 36 C.F.R. § 1251.6(j) (allowing NARA to consider whether disclosure would reveal confidential, sensitive, privileged, or otherwise protected information). Your request implicates the deliberative process privilege to the extent you seek records related to predecisional policy discussions. *See, e.g.*, *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 45 (D.D.C. 2017). For example, you seek "records relating to[] COVID relief, Operation Warp Speed, COVID testing, the allocation and distribution of COVID supplies, prescription drug cost relief, appropriations, the Afghanistan withdrawal, the Abraham Accords, the National Defense Authorization Act, and numerous national security decisions on worldwide topics and threats." Ex. 2, Pet. for Certificate, Ex. A ¶ 1. And you seek "documents covering a multitude of subjects" related "to the transition of presidential administrations." *Id.* ¶ 2.

Moreover, your request for "[a]ny and all emails and text messages between the Office of the Chief of Staff and the Department of Justice from November 4, 2020, to January 20, 2021," *id.* ¶ 11, implicates the attorney-client privilege and the attorney work-product privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (attorney-client privilege applies when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests").

Finally, your request may also implicate the state secrets privilege. *See United States v. Zubaydah*, 595 U.S. 195, 199 (2022). For example, you request records related to "the Afghanistan withdrawal, the Abraham Accords, the National Defense Authorization Act, and numerous national security decisions on worldwide topics and threats," Ex. 2, Pet. for Certificate, Ex. A ¶ 1; "notes from the Chief of Staff's daily national security briefer," *id.* ¶ 2; and "[a]ny and all emails and texts messages between the Office of the Chief of Staff and Christopher Miller (Acting Secretary of Defense) and/or Kashyap Patel (Chief of Staff to Acting Secretary of Defense)," *id.* ¶ 12.

\*\*\*

For the foregoing reasons, NARA declines to release the requested records or authorize the requested testimony. Please let me know if you have any questions or would like to discuss further.

Sincerely,

*/s/ Cassandra Snyder*
Cassandra Snyder
(202) 451-7729

Exhibit 1

# McGuireWoods

**McGuireWoods LLP**
888 16th Street N.W.
Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Phone: 202.857.1700
Fax: 202.857.1737
www.mcguirewoods.com

**John S. Moran**
Direct: 202.525.0356
jmoran@mcguirewoods.com

<u>**By Federal Express**</u>

May 13, 2024

Colleen Shogan
Archivist of the United States
National Archives & Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408

Jack Smith
Special Counsel
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

<u>**_Touhy_ Authorization to Produce Documents Material to the Defense
of Former White House Chief of Staff Mark R. Meadows
in _State v. Trump_, No. 23SC18894 (Ga. Sup. Ct., Fulton Cnty.)**</u>

Archivist Shogan and Special Counsel Smith:

Mr. Terwilliger and I write on behalf of our client, former White House Chief of Staff Mark R. Meadows, regarding the production of certain documents in the possession of the United States, specifically the National Archives and the Department of Justice, which are material to his defense in _State v. Trump_, No. 23SC18894 (Ga. Sup. Ct., Fulton Cnty.).

The Superior Court in that case has issued a Certificate of Need under the Uniform Act to Secure the Attendance of Witnesses, which is attached here. Contemporaneously with the transmission of this letter, we are filing and serving an application in the Superior Court of the District of Columbia, pursuant to D.C. Code § 23-1502 to enforce that Certificate. The purpose of this proceeding is to secure testimony from you or your designees as custodians of records or to secure the production of documents in lieu of such testimony. Exhibits A & B to Mr. Meadow's state-court petition, which are incorporated by reference into the Certificate and set forth the documents sought, are also attached.

Mr. Meadows is entitled to these documents in preparation of his defense by law and as a matter of fundamental fairness and constitutional due process. To the extent that you believe authorization to produce these documents is necessary, _see United States ex rel._

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City
Los Angeles - Downtown | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Tysons | Washington, D.C.

Meadows Touhy Request
May 13, 2024
Page 2


*Touhy v. Ragen*, 340 U.S. 462 (1951), we ask that you construe this letter and the enclosed exhibits as a request for such authorization under the applicable regulations for the National Archives, *see* 36 C.F.R. § 1251.1 *et seq.*, and the Department of Justice, *see* 28 C.F.R. § 16.21 *et seq*. We do not believe, however, that these regulations or the principle announced in *Touhy* in any way limits Mr. Meadows's right to secure these documents for use in his defense.

Please do not hesitate to contact me should you have any questions about these requests, should you believe there is anything else necessary to request authorization, or to arrange for the production of the requested documents.

Sincerely,

John S. Moran

*Counsel to Mark R. Meadows*


cc:    George J. Terwilliger, III, Terwilliger Law PLLC

James Durham, Griffin Durham Tanner Clarkson LLC

Gary Stern, General Counsel, National Archives & Records Administration

Betsy Shapiro, Deputy Director, Federal Programs Branch, Civil Division, U.S. Department of Justice

# Exhibit 2

Fulton County Superior Court
***EFILED***NY
Date: 2/27/2024 10:56 AM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

|  |  |  |
|---|---|---|
| STATE OF GEORGIA, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD JOHN TRUMP, et al., | ) | CASE NO.: 23SC188947 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT MARK R. MEADOWS' PETITION FOR CERTIFICATE OF
NEED TO SECURE TESTIMONY AND / OR PRODUCTION OF
DOCUMENTS, PURSUANT TO THE UNIFORM ACT TO SECURE THE
ATTENDANCE OF WITNESSES FROM WITHOUT THE STATE, FROM THE
DOJ AND THE NATIONAL ARCHIVES**

COMES NOW, Mark R. Meadows, and petitions this Honorable Court for a

Certificate of Need for testimony and/or production of documents, pursuant to

O.C.G.A. § 24-13-90 *et seq*. In support of his petition, Mr. Meadows shows the Court

as follows:

1.      On August 14, 2023, the Fulton County District Attorney secured an

indictment against Mark Meadows, former Chief of Staff to the President of the

United States; former President Donald Trump himself; and 17 others regarding

allegations of election interference in the 2020 presidential election.  The allegations

against Mr. Meadows in the indictment all occurred during his tenure as White House

1

Chief of Staff and consist predominately of actions he took inside the West Wing of the White House.

2.      When Mr. Meadows and other members of the Executive Office of the President left federal service on January 20, 2021, custody of their official records (notes, files, texts, calendars, logs and all other documentary materials) was transferred to the National Archives and Records Administration (NARA) pursuant to the Presidential Records Act, 42 U.S.C. § 2201, et seq. (PRA).  By law, access to these records is extremely limited and specifically exempted from FOIA access, for years.  If not for his service as White House Chief of Staff, and the requirements of the PRA, Mr. Meadows would still have his calendars, emails, and other documents from the time of the indicted conduct.  But it is precisely because Mr. Meadows served as a senior federal official in the White House that he no longer has access to those and other relevant records.

3.      In its almost two-year long investigation, the Fulton County District Attorney's prosecution team: met multiple times with current White House officials, met and corresponded with members of the House of Representatives January 6 Committee, downloaded documents and transcripts selectively posted by the January 6 Committee on their public website, obtained publicly available pleadings and deposition transcripts from various 2020 election-related civil cases, and paraded a lengthy list of witnesses before the Special Purpose Grand Jury.

4.      The Fulton County prosecution team did not, however, subpoena from NARA the official records of the witnesses they questioned or the individuals they

targeted relating to the very conduct that they've charged.  Nor, upon information and belief, did the Fulton County prosecution team seek any materials from the U.S. Department of Justice, which investigated the same alleged conduct.  Had they done so, Mr. Meadows would have received those materials in discovery and could rely on them in his defense.

5.     The Fulton County District Attorney's Office's failure to seek relevant and material records from NARA is in notable contrast to the case brought by the Office of Special Counsel Jack Smith in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.).  Upon information and belief, the Office of Special Counsel sought and obtained access from NARA to relevant and material documents, including those official records of Mr. Meadows while serving as Chief of Staff.  With these relevant and material documents in their possession, the Special Counsel's Office reached a very different decision about Mr. Meadows and his conduct.  That Office's description of Mr. Meadows' activities differs dramatically from that of the Fulton County District Attorney's Office.  Indeed, in a case involving an exhaustive investigation by competent prosecutors who actually sought and obtained access to the universe of relevant and material records, Mr. Meadows is described in the federal indictment not as a defendant, nor as an un-indicted co-conspirator, but instead simply as a witness.

6.     Mr. Meadows has a constitutional right to seek and obtain those records for use in his defense.  The Due Process clauses of the Georgia and federal constitutions afford criminal defendants with the powers of compulsory process.

Executive components within the federal government namely, the U.S. Department of Justice through the Office of the Special Counsel and NARA, have in their possession official records of Mr. Meadows and other members of the Executive Office of the President, which are relevant and material to Mr. Meadows' immunity and other defenses.  Counsel for Mr. Meadows have made informal inquiries with these Executive Branch offices, who have indicated they will not produce those records without a court order.

7.      Given the relevance and materiality of the records held by NARA and the DOJ, Mr. Meadows moved this Court to order the production of these records, citing *Buford v. State*, 158 Ga. App. 763 (1981), in support of his motion.  The Government did not oppose Mr. Meadows' motion.  In response, this Court suggested Mr. Meadows first attempt to seek production of the documents that were the subject of his motion through: (1) a petition directed to the relevant custodians in Washington, D.C. under Georgia's Uniform Act to Secure the Attendance of Witnesses from Without the State (the "Uniform Act"); and (2) a Fulton County Superior Court subpoena directed to the Georgia-based offices of NARA and the DOJ.

8.      Georgia's Uniform Act, OCGA § 24–10–90 *et seq.*, "has been construed as providing a mechanism for obtaining a subpoena *duces tecum* compelling the out-of-state witness to produce specified documents that are necessary and material to the case." *French v. State*, 288 Ga. App. 775, 776 (2007) (citing *Wollesen v. State*, 242 Ga. App. 317, 321(3) (2000)).  In fact, most U.S. state courts that have considered the question have concluded that the Uniform Act procedures can be used to require a

witness to provide documents through subpoena *duces tecum*. *See Davenport v. State*, 289 Ga. 399, 401 (2011) (collecting cases from Alabama, Florida, Maryland, Nevada, New Jersey, and New York that conclude that courts have the power under the state's Uniform Act laws to order the witness to produce relevant documents).  And, many courts have found that "the Uniform Act authorizes the issuance of a subpoena *duces tecum* -- a subpoena only for documents." *Johnson v. O'Connor*, 327 P.3d 218, 223-224 (Ariz. Ct. App. 2014) (collecting cases from Alabama, Florida, Georgia, Massachusetts, Maryland and Nevada).

9.     Under Georgia's Uniform Act, "a Georgia trial court is required by O.C.G.A. § 24–10–94(a) to determine whether the person sought to be summoned  . . . 'is a material witness in a prosecution pending in a court of record in [Georgia,]' and whether the state in which the out-of-state witness is located has laws 'for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this state[,] . . .'. *Davenport*, 289 Ga. at 401. If the trial court finds those criteria are met, "the Georgia trial judge 'may issue a certificate under . . . seal' that is then presented to a judge of a court of record in the out-of-state county in which the witness is found." *Id*. Both requirements are met here.

10.    The custodians of the requested documents are found in Washington DC.  NARA's Archivist, Colleen Shogan, and any other NARA custodian of records may be served at NARA's DC office, 700 Pennsylvania Avenue, NW, Washington, DC 20408.  DOJ's Special Counsel, Jack Smith, and any other DOJ custodian of records may be served at the Special Counsel's Office, 950 Pennsylvania Avenue, NW,

Washington, DC 20530.  Like Georgia, the District of Columbia has its own Uniform Act statutes.  *See* D.C. Code §§ 23-1501 to 1504.

11.     The specific documents sought are described in the attached Exhibits A (NARA records) and B (DOJ records).

12.     Mr. Meadows did not conspire to unlawfully change the outcome of the 2020 election in favor of President Trump (Count One).  Nor did he solicit Georgia's Secretary of State to violate some yet-to-be-disclosed oath (Count 28).  Instead, the acts of Mr. Meadows described in this indictment, as evidenced, and corroborated in the official records he seeks, were the official acts of the Chief of Staff.  Mr. Meadows actions after the 2020 election were performed so as to help in directing as much of the President's focus as possible from extraneous matters to critical issues of national and international import, and to closely engage with members of the Executive Office of the President, President Biden's transition team and others to accomplish the transition from one administration to the next.  And in any event, none of Mr. Meadows' actions was taken in furtherance of an illegal conspiracy.

13.     The NARA records sought in Attachment A include Mr. Meadows' official records during his tenure as the former Chief of Staff and leader of the Executive Office of the President, as well as communications after the 2020 Presidential election between certain members of his team in the Executive Office of the President, certain call records involving offices within Mr. Meadows' control as the Chief of Staff, and the schedules and calendars of certain Executive officials after the 2020 Presidential Election.  These specific records identify, among other things,

what Mr. Meadows was doing, what he was directing his subordinates to do, when they were doing it, and why.  The records which, again, were not sought by Fulton County reveal that Mr. Meadows was not conspiring to unlawfully change the outcome of the 2020 Presidential Election, and that his intent was to perform his official acts as the Chief of Staff and head of the Executive Office of the President. The records are therefore material and directly relevant not only to Mr. Meadows' defense of immunity under the Supremacy Clause of the the U.S. Constitution, but also to his substantive defense against the State's RICO and solicitation charge, which turn in substantive part on the defendant's state of mind.

14.     The DOJ documents sought in Attachment B relate to: (1) documents the United States has produced in discovery *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.); (2) official records of Mark Meadows obtained by the Special Counsel; and, (3) documents exculpatory to Mr. Meadows.  The Special Counsel availed himself to a much greater universe of relevant materials during its investigation of the very conduct charged in Fulton County.  Based on their expansive investigation of relevant and material information, the Special Counsel accurately described Mr. Meadows in the federal indictment as a witness and has not brought any federal charges against him.  The documents showing Mr. Meadows' actual role and intent during the so-called RICO conspiracy charged in Fulton County have been produced in discovery by the Special Counsel in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.), or are otherwise in the Special Counsel's possession, custody or control.

7

15.     Since Fulton County did not seek the documents requested from NARA and DOJ, the records sought will not be cumulative of any other evidence in this matter.

16.     To the extent that NARA and DOJ officials do not wish to testify in person during a hearing or trial of this matter, such attendance would be obviated by a full production of the records sought. In the event neither recipient elects to produce documents in lieu of testimony, the testimony will not exceed one day.

17.     If NARA and DOJ officials decline to produce documents in lieu of testimony, Mr. Meadows will pay all reasonable and necessary travel expenses and witness fees required to secure attendance in accordance with the Uniform Act.

18.     If NARA and DOJ officials elect to come into the State of Georgia pursuant to this petition, the laws of this State shall give both protection from arrest and from service of civil process, both within this State and in any other state through which they may be required to pass in the ordinary course of travel for any matters which arose before their entrance into this State and other states.

Wherefore, Mark Meadows prays that this Honorable Court issue a Certificate of Need to Secure Testimony and/or the Production of Documents under seal of this Court, pursuant to O.C.G.A. §24-13-90 et seq., certifying to the proper authorities in the jurisdiction in which NARA and DOJ officials are located stating that documents within the custody and control of NARA and DOJ officials are material for the above-referenced criminal prosecution, and the production of the documents set forth in

Exhibit A and Exhibit B must be produced by the same.  A proposed Certificate of

Need will be provided to the Court.

      Respectfully submitted on this 27th day of February, 2024.


                                   **GRIFFIN DURHAM TANNER &**
                                   **CLARKSON, LLC**

                   By: /s/ James D. Durham
                               James D. Durham
                               Georgia Bar No. 235515
                               jdurham@griffindurham.com
                               104 West State Street, Suite 200
                               Savannah, GA 31401
                               Ph/Fax:  912-867-9140

                               *Attorneys   for   Defendant   Mark   Randall*
                               *Meadows*

# ATTACHMENT A

**Attachment A**

**National Archives and Records Administration (NARA) Documents**

1.

Any and all official records, including, but not limited to, any textual, audiovisual and electronic media, created or received by Mark R. Meadows, the 29th Chief of Staff to the President of the United States, from March 31, 2020, to January 20, 2021, including, but not limited to, emails, text messages, logs, calendars, internal schedules, notes and files.  Such official records will include, but not be limited to, records relating to: COVID relief, Operation Warp Speed, COVID testing, the allocation and distribution of COVID supplies, prescription drug cost relief, appropriations, the Afghanistan withdrawal, the Abraham Accords, the National Defense Authorization Act, and numerous national security decisions on worldwide topics and threats.

2.

Any and all official records from the Executive Office of the President from November 4, 2020, to January 20, 2021, relating to the transition of presidential administrations, including, but not limited to, emails, texts and other communications between the Executive Office of the President and President-Elect Biden's transition team.  Among many documents covering a multitude of subjects, the records will include notes from the Chief of Staff's daily national security briefer,

related to instructions to brief President-Elect Biden and the Biden Transition Team members within secured settings.

3.

Phone logs of internal calls between the White House switchboard and the Chief of Staff's Office from November 4, 2020, to January 20, 2021.

4.

Phone logs between the White House Situation Room and the Chief of Staff's Office from November 4, 2020, to January 20, 2021.

5.

Phone logs from November 4, 2020, to January 20, 2021, between the Chief of Staff's Office and Air Force One, and between the Chief of Staff's Office and remote vehicle phones.

6.

Emails and text messages from November 4, 2020 to January 20, 2021 of the following officials within the Executive Office of the President: Chris Liddell (Deputy Chief of Staff), Cassidy Hutchinson (Executive Assistant to the Chief of Staff), Eliza Thurston (Special Assistant to the President), Anthony Ornato (Deputy Chief of Staff), Beau Harrison (Deputy Assistant to the President), Molly Michaels (Assistant to the President) and Michael Haidet (Deputy Assistant to the President for Presidential Scheduling).

7.

Air Force One's manifest from March 31, 2020, to January 20, 2021.

8.

Records relating to Air Force One's allocation of costs associated with official and non-official duties from March 31, 2020, to January 20, 2021.

9.

Calendars and internal schedules for the President of the United States, Vice President of the United States and National Security Advisor from November 4, 2020, to January 20, 2021.

10.

Detailed White House visitor logs from November 4, 2020, to January 20, 2021.

11.

Any and all emails and text messages between the Office of the Chief of Staff and the Department of Justice from November 4, 2020, to January 20, 2021.

12.

Any and all emails and text messages between the Office of the Chief of Staff and Christopher Miller (Acting Secretary of Defense) and/or Kashyap Patel (Chief of Staff to Acting Secretary of Defense) from November 4, 2020, to January 20, 2021.

# ATTACHMENT B

**Attachment B**

**U.S. Department of Justice Documents**

1.

All discovery produced by the Special Counsel in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.), including, but not limited to all statements, documents, materials and reports produced pursuant to Fed. R. Crim. P. 16(a) and statements of witnesses produced pursuant to the *Jencks* Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2.

2.

Any and all official records, including, but not limited to any textual, audiovisual and electronic media, created or received by Mark R. Meadows, the 29th Chief of Staff to the President of the United States from March 31, 2020, to January 20, 2021, including, but not limited to emails, text messages, logs, calendars, internal schedules, notes and files.

3.

Any and all materials possessed in the Special Counsel that are exculpatory to Mark R. Meadows relating to the charges in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify I electronically filed the foregoing document with the Clerk of Court using Odyssey Efile Georgia electronic filing system that will send notification of such filing to all parties.

This 27th day of February, 2024.

**GRIFFIN DURHAM TANNER & CLARKSON**

By: <u>/s/ James D. Durham</u>
James D. Durham
Georgia Bar No. 235515
jdurham@griffindurham.com
104 West State Street, Suite 200
Savannah, GA 31401
Ph/Fax:  912-867-9140

*Attorneys for Defendant Mark Randall Meadows*